Erin Rose Ronstadt, SBN 028362
Kyle Shelton, SBN 027379
RONSTADT LAW, PLLC
P.O. Box 34145
Phoenix AZ 85067
Phone: (602) 615-0050
Fax: (602) 761-4443
erin@ronstadtlaw.com
kyle@ronstadtlaw.com

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kristina Harrison, a married woman,<br><br>                  Plaintiff,<br>v.<br><br>Unum Life Insurance Company of America, a plan fiduciary; The Evangelical Lutheran Good Samaritan Society Long-Term Disability Plan, an ERISA benefit plan; and The Evangelical Lutheran Good Samaritan Society, a plan administrator,<br><br>                  Defendants. | No.<br><br>**COMPLAINT** |

For her claims against Unum Life Insurance Company of America ("Unum"), a plan fiduciary; The Evangelical Lutheran Good Samaritan Society Long-Term Disability Plan (the "Plan"); and The Evangelical Lutheran Good Samaritan Society ("Good Samaritan"), a plan administrator and fiduciary (collectively "Defendants"), Plaintiff Kristina Harrison ("Mrs. Harrison" or "Plaintiff") alleges as follows:

**Jurisdiction, Venue, and Parties**

1. This action arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA").

2. The Plan is a purported ERISA benefit plan established and maintained by Good Samaritan for the benefit of its employees.

3. Good Samaritan is the Plan Sponsor, Plan Administrator, a Plan fiduciary, and the employer.

4. Mrs. Harrison was a participant and beneficiary of the Plan as an employee of Good Samaritan.

5. Unum is a third-party claims administrator for the Plan.

6. Unum is a Plan fiduciary.

7. Under the Plan, Unum fully insures eligible employees of Good Samaritan for long-term disability ("LTD") benefits pursuant to Policy Number 425681 (the "Policy").

8. At the time Mrs. Harrison sought LTD benefits under the Plan, Unum administered claims for Good Samaritan under the Plan, acted on behalf of the Plan, and acted as an agent of Good Samaritan and the Plan to make final decisions regarding the payment of disability benefits for the Plan.

9. Good Samaritan and Unum have a duty to administer the Plan prudently and in the best interests of all Plan participants and beneficiaries.

10. Mrs. Harrison currently resides in Maricopa County, Arizona and has been a resident of Maricopa County at all times since becoming a Plan participant. Mrs. Harrison is a citizen of the United States of America and of Arizona.

11. The Plan and Good Samaritan have their principal places of business in the State of South Dakota.

12. Unum has its principal place of business in the State of Maine.

13. Defendants Unum and the Plan are licensed and authorized to do business in Maricopa County, Arizona, and reside and are found within Maricopa County within the meaning of the jurisdiction and venue provisions of ERISA, 29 U.S.C. § 1132 and 28 U.S.C. § 1391.

14. This Court has jurisdiction over the subject matter of this action under ERISA, 29 U.S.C. §§ 1132(a), 1132(e)(1), and 28 U.S.C. §§ 2201-02 (declaratory judgments).

15. Venue is proper in this Court under ERISA, 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1391(b).

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

**GENERAL ALLEGATIONS**

16. Mrs. Harrison suffers from multiple medical conditions that render her totally disabled under the Plan.

17. Her medical conditions cause a host of symptoms that severely diminish her ability and capacity to work.

18. Mrs. Harrison's treating specialist physicians and other providers have verified and confirmed her medical conditions using objective examination findings and diagnostic testing.

19. Mrs. Harrison suffers from chronic diastolic congestive heart failure, chronic pericarditis, hypercholesterolemia, hypoactive thyroid, chronic kidney disease, asthma, and exertional shortness of breath.

20. The conditions that Mrs. Harrison suffers from have led to Mrs. Harrison being obese.

21. Based on her collective medical conditions, Mrs. Harrison is Disabled and unable to perform any gainful occupation.

22. Under the Policy, a "gainful occupation" is defined as "an occupation that is or can be expected to provide [Mrs. Harrison] with an income within 12 months of [her] return to work, that exceeds …60% of [her] indexed monthly earnings."

23. Mrs. Harrison worked as a Nurse Manager for Good Samaritan from August 19, 2015 through her last date of work on May 21, 2018.

24. Mrs. Harrison does not have a Registered Nurse ("RN") degree.

25. Mrs. Harrison is a Licensed Practical Nurse ("LPN").

26. In a letter dated August 10, 2020, Unum terminated Mrs. Harrison's LTD claim for her alleged failure to meet the "any gainful occupation" definition of Disability under the Plan (the "Denial").

27. In its Denial, Unum misrepresented the medical evidence, Mrs. Harrison's treating provider assessments, Mrs. Harrison's vocational capabilities, and even its own prior findings of Disability.

28. Unum failed to consider the effects of the COVID-19 pandemic on Ms. Harrison's ability to seek treatment and have in-person office visits, physical exams, and diagnostic testing.

29. Instead, Unum relied almost exclusively on its biased and inadequate paper file reviews by Dr. Sabrina Hammond and Dr. Neal Greenstein.

30. Drs. Hammond and Greenstein have not physically examined or even spoken with Mrs. Harrison. Their opinions are based solely on a review of the medical records.

31. Drs. Hammond and Greenstein opined that Mrs. Harrison is no longer Disabled because there is noted improvement with a trial medication that she is taking. However, the collective medical evidence notes that, although improved, she is still symptomatic and limited by her medical conditions.

32. Drs. Hammond and Greenstein knew that Mrs. Harrison's issues were ongoing and that the trial medication was not a "cure all" for Ms. Harrison's multitude of issues.

33. Drs. Hammond and Greenstein's opinions are contradictory to Unum's prior medical file reviews, which found that Mrs. Harrison could not perform any work, sedentary or otherwise, without significant weight loss.

34. Mrs. Harrison has been unable to lose weight since these medical file reviews. In fact, Ms. Harrison has gained weight since this time.

35. Mrs. Harrison's weight gain is largely related to her inability to exercise secondary to her medical conditions.

36. Drs. Hammond and Greenstein unreasonably disregarded the opinions of Mrs. Harrison's examining specialists and her credible symptomology.

37. In its Denial, Unum failed to explain why it credited Drs. Hammond and Greenstein over Mrs. Harrison's treating providers and unreasonably relied on their opinions when it knew or should have known that they conducted inadequate and biased reviews.

38. In reaching its Denial, Unum failed to conduct a "whole person" review and analysis.

39. Additionally, in its internal notes and its denial letter, Unum continually perseverated on one sentence from a telemedicine visit with Dr. Harry Teaford on May 29, 2020, in which Dr. Teaford notes, "She is on the RHAPSODY trial for treatment of her pericarditis and notes that this is the best she has felt in the last 4 years."

40. Despite the sentence being specifically about her pericarditis symptoms under the RHAPSODY trial, Unum actively misconstrued the notation throughout the claim file, even characterizing it in their Denial letter as, "In May 2020 you reported to your doctors that this is the best you have felt in the last 4 years."

41. Unum's continual mischaracterization of that notation and failure to allow Mrs. Harrison or Dr. Teaford any opportunity to further elaborate on that notation is evidence of Unum's overt bias towards denying Mrs. Harrison's benefits and their commitment to slanting any information towards their own goal of denying benefits.

42. Unum abused its discretion and acted in its own best financial interests, depriving Mrs. Harrison of a full and fair review in violation of 29 C.F.R. § 2560.503-1.

43. On February 8, 2021, Mrs. Harrison appealed the Denial (the "Appeal").

44. Based on the medical evidence in its possession at the time of the Denial, Unum should have never terminated Mrs. Harrison's LTD claim.

45. The additional medical evidence provided with the Appeal further substantiated Mrs. Harrison's Disability under the Plan. This included further medical evidence, including additional objective findings, and a January 26, 2021 Vocational Report.

46. In the January 26, 2021 report, Mrthe evaluator concluded that Mrs. Harrison is competitively unemployable secondary to her medical conditions.

47. Notwithstanding Mrs. Harrison's inability to perform any gainful occupation, the evaluator explained that all of the occupations identified by Unum in the Denial all require an RN degree, which Mrs. Harrison does not have.

48. On its LTD appeal review Unum invited Mrs. Harrison to respond to the new, adverse evidence created during the Appeal review. This included of two medical file reviews conducted by Megan M. Yeaton, RN, BSN on February 24, 2021 and Dr. George J.

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

DiDonna on March 11, 2021 (the "peer reviewers"), as well as a vocational analysis by Kelly B. Marsiano, M.Ed., C.R.C.

49. Dr. DiDonna is a Unum in-house medical reviewer with a history of known bias.

50. The peer reviewers have not examined or even spoken with Mrs. Harrison or her treating providers. Their opinions are based solely on a review of the medical records.

51. The peer reviewers collectively opined that Mrs. Harrison had improved in her overall symptoms as of August 14, 2020 and is capable of sedentary work. In reaching this conclusion, the peer reviewers made multiple errors and misrepresentations.

52. The peer reviewers failed to address the impact of Mrs. Harrison's obesity on her medical conditions.

53. The vocational analysis by Ms. Marsiano is based solely on the restrictions and limitations outlined by the peer reviewers.

54. Unum routinely secures vocational analyses that consider nothing but its own biased medical opinions, which inevitably results in a one-sided evaluation.

55. In light of her CRC licensure, Ms. Marsiamo knows better than to be complicit in such a biased review and is in violation of her ethical and fiduciary responsibilities for even participating.

56. On April 29, 2021, Mrs. Harrison responded to the adverse evidence on appeal review.

57. As part of her response to the adverse evidence on appeal, Ms. Harrison submitted an addendum report from the independent vocational evaluator dated April 23, 2021, as well as an April 12, 2021 letter from Dr. William Nassour.

58. In his report, the evaluator disagreed with Ms. Marsiano, in part, because "she does not provide any specificity as to the names of employers that would consider Ms. Harrison a qualified applicant for the various positions as Triage Call Center Nurse, Medical Claim Review Nurse, Home Care Coordinator or other positions recommended earlier. *Ms. Marsiano's statement is simply a repetitive one without additional documentation to support her most recent opinion as contained in her vocational report of 2/19/21.*" (emphasis in original). Alternatively, in

-6-

his original January 26, 2021 report, the evaluator "listed *specific employers* which absolutely required an RN degree without exception." (emphasis in original).

59. In his April 12, 2021 letter, Dr. Nassour concluded that, "[Mrs. Harrison] is unable to sustain any type of full-time work. … She would not be able to work 8 hours a day even in a sedentary occupation."

60. Given Dr. Nassour's expertise, longstanding treatment of, and physical examination of Ms. Harrison, he is best situated to evaluate her restrictions and limitations.

61. On May 3, 2021, Unum issued a final administrative determination, terminating Mrs. Harrison's LTD benefits (the "Final Denial").

62. In reaching the Final Denial, Unum relied heavily on the peer reviewers' erroneous and biased reports.

63. Unum's reliance on the peer reviewers was an abuse of discretion and contrary to its duty to perform a full and fair review.

64. In its Final Denial, Unum failed to properly consider Mrs. Harrison's Social Security Disability Insurance ("SSDI") award of benefits.

65. In its Final Denial, Unum failed to properly consider Dr. Nassour's April 21, 2021 conclusions, restrictions, and limitations.

66. In its Final Denial, Unum failed to properly consider the vocational evaluator's addendum Vocational Report.

67. Mrs. Harrison cannot work in any gainful occupation and, therefore, comes within the definition of Disability under the Plan.

68. Mrs. Harrison requested her Plan documents from Good Samaritan on October 16, 2020, January 4, 2021, and July 21, 2021; however, Good Samaritan never produced documents pursuant to its obligations under ERISA.

69. Mrs. Harrison exhausted her administrative remedies and timely filed this lawsuit.

**COUNT I**
**(Recovery of LTD Plan Benefits)**
**(Defendants Unum and the Plan)**

70. All other paragraphs are incorporated by reference.

71. The Plan is an Employee Welfare Benefit Plan as defined in ERISA, 29 U.S.C. § 1002.

72. The Plan represents LTD coverage and a promise to provide these benefits until Mrs. Harrison is no longer Disabled under the terms of the Plan.

73. Mrs. Harrison is Disabled from any gainful occupation.

74. Mrs. Harrison has claimed the benefits under the Plan to which she is entitled.

75. Defendants Unum and the Plan wrongfully denied those benefits.

76. Mrs. Harrison reasonably expected that her medical conditions met the requirements of Disability as defined by the Plan and that he would receive benefits under the Plan until she reaches age 67, or until she was no longer Disabled.

77. Unum and the Plan's collective conduct was arbitrary, capricious, an abuse of discretion, not supported by substantial evidence, and clearly erroneous.

78. Although the LTD Policy states that Unum has discretion with respect to determining eligibility and to interpret the Plan, under ERISA, that can only be true if the Plan reserved that discretion to the Plan Administrator, the Plan terms provide a mechanism for the Plan Administrator to delegate that discretion, and there is evidence that the discretion was delegated in accordance with the terms of the Plan.

79. On information and belief, there is no written Plan document that reserves discretion to the Plan Administrator or contains terms by which discretion can be delegated, and therefore, under ERISA, discretion could not be delegated to Unum.

80. Even if Good Samaritan properly delegated discretionary authority to Unum, in light of Unum's wholesale and flagrant procedural violations of ERISA, Mrs. Harrison should be entitled to *de novo* review. *See Halo v. Yale Health Plan,* 819 F.3d 42, 60-61 (2d Cir. 2016) ("when denying a claim for benefits, a plan's failure to comply with the Department of Labor's claims-procedure regulation, 29 C.F.R. § 2560.503-1, will result in that claim being reviewed *de novo* in federal court, unless the plan has otherwise established procedures in full conformity with the regulation and can show that its failure to comply with the

claims-procedure regulation in the processing of a particular claim was inadvertent and harmless.")

81. Instead of evaluating a participant's eligibility based on the applicable plan language and medical evidence, Mrs. Harrison is informed and believes that Unum makes claims decisions based on the claims resources and financial risk it faces on certain claims.

82. Unum failed to conduct a full and fair review.

83. Unum did not properly consider all of the available evidence when terminating Mrs. Harrison's benefits.

84. In reaching its Denial and Final Denial, Unum failed to properly consider Mrs. Harrison's medical evidence, valid symptomology, and treating provider assessments.

85. In reaching its Final Denial, Unum improperly disregarded the vocational report and addendum vocational report that Mrs. Harrison submitted with her Appeal and response to adverse evidence on appeal.

86. Unum exclusively relied on medical file reviews provided by in-house medical consultants and non-examining physicians.

87. On information and belief, Unum used in-house reviewers in evaluating Mrs. Harrison's claim because it knew that the in-house reviewers' recommendations would be unfavorable for the continuation of Mrs. Harrison's benefits.

88. Unum abused its discretion by basing its decision on unreliable and inaccurate information, such as the reports provided by Drs. Yeaton and DiDonna. When confronted with this knowledge, Unum continued to rely on these peer reviewers despite their obvious bias and mistakes.

89. On information and belief, Unum provides its reviewers and vendors with internal notes and financial information about the claim, compromising their ability to make "independent" medical determinations and creating further bias in reviews.

90. Unum routinely emphasizes information that favors a denial of benefits while deemphasizing other information that suggests a contrary conclusion.

91. Unum's biased medical consultants mischaracterize evidence to support their conclusions that Mrs. Harrison can work.

92. Unum failed to properly consider the opinions of Mrs. Harrison's treating providers and her vocational evaluation.

93. Unum has a history of parsimonious claims handling, which is directly relevant to this Court's analysis of the standard of review, including whether to confer Unum with discretionary authority, and it is also relevant to this Court's consideration of Unum's procedural violations.

94. Unum's ERISA violations were more than de minimis.

95. Unum failed to engage in a "meaningful dialogue" regarding Mrs. Harrison's claim.

96. Unum engaged in procedural irregularities to serve its own financial best interests.

97. On information and belief, Unum's termination of Mrs. Harrison's claim is tied directly to an aggressive effort by Unum to limit its liability on LTD insurance claims in early 2020.

98. In the first quarter of 2020, Unum had suffered a $120 million net income loss compared to the corresponding quarter from the year prior.

99. The Maine Bureau of Insurance concluded that Unum's statutory reserves were deficient by $2.1 billion at the end of 2018, necessitating a plan to "phase-in" hundreds of millions of dollars to ensure its statutory reserve obligations were met.

100. Unum's group disability business experienced a nearly 8% decrease of adjusted operating income and a 15% decrease in sales compared to the first quarter of the prior year.

101. Unum experienced a group disability benefit ratio loss of 1.5% "due primarily to favorable claim recovery experience in our group long-term disability product line, partially offset by higher claims incidence in both our group long-term and short-term disability product lines." *Pandemic Cited As Unum Faces Major Income Drop, $2.1 Billion Reserve Deficiency At Maine Operation*, May 6, 2020,

**RONSTADT LAW, PLLC**
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

https://www.chattanoogan.com/2020/5/6/408632/Pandemic-Cited-As-Unum-Faces-Major.aspx (Last accessed March 9, 2021).

102. On information and belief, as a result of Unum's deficient claims reserves and revenue and profitability, it has engaged in aggressive LTD claim termination efforts companywide.

103. On information and belief, Unum's motivation in terminating Mrs. Harrison's LTD benefits was to eliminate a long-term financial liability.

104. Plaintiff is informed and believes that Unum continues to experience financial issues as a company, including shortages in its reserves for the payment of claims.

105. Plaintiff is informed and believes that, as a company, Unum has increased its efforts to deny otherwise valid claims as a result of its financial considerations.

106. Plaintiff is informed and believes that Unum did not set aside adequate reserves to pay Mrs. Harrison's claim.

107. On information and belief, Mrs. Harrison was a victim of Unum's corporate efforts to drive profitability.

108. In a multitude of ways, Unum's conduct in this case violates the terms past regulatory settlement agreements it has entered into with California and other states from 2005, 2008, and beyond.

109. Under the de novo standard of review, to be entitled to benefits, Mrs. Harrison need only prove by a preponderance of the evidence that she is Disabled.

110. Even under the abuse of discretion standard of review, Unum abused its discretion, because its decision terminating Mrs. Harrison's disability benefits was arbitrary and capricious and unduly influenced by Unum's financial conflicts of interest. These conflicts of interest precluded the full and fair review required by ERISA, 29 U.S.C. 1133(2) and 29 C.F.R. § 2560.503-1(g)(1) and (h)(2).

111. Mrs. Harrison is entitled to discovery regarding the effects of the procedural irregularities and structural conflict of interest that infiltrated the claims handling process and also regarding the effects of Unum's reviewing physicians', its employees', and its

vendors' financial conflicts of interest, biases, and financial motivations and circumstances surrounding Unum's decision to terminate Mrs. Harrison's LTD claims.

112. Under the de novo standard of review, Mrs. Harrison is entitled to discovery regarding, among other things, the credibility of Unum's medical reviews and Unum's lack of partiality due to its financial conflicts of interest. *Opeta v. Nw. Airlines Pension Plan for Contract Employees*, 484 F.3d 1211, 1217 (9th Cir. 2007) (under the de novo standard of review, new evidence may be admitted regarding, among other things: "the credibility of medical experts… [and] instances where the payor and the administrator are the same entity and the court is concerned about impartiality" (*quoting Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1026-27 (4th Cir. 1993)).

113. Pursuant to the coverage provided in the Plan, to ERISA 29 U.S.C. § 1132(a)(1)(B), and to applicable federal law, Mrs. Harrison is entitled to recover all benefits due under the terms of the Plan, and to enforce her rights under the Plan.

114. Mrs. Harrison is entitled to reinstatement of any other employee benefits that were terminated, discontinued, or suspended as a result of the termination of her disability benefits. She is entitled to a restoration of the *status quo ante* before LTD benefits were wrongfully terminated.

115. Pursuant to 29 U.S.C. § 1132(g), Mrs. Harrison is entitled to recover her attorneys' fees and costs incurred herein.

116. Mrs. Harrison is entitled to prejudgment interest on the benefits to which she is entitled and on her damages at the highest legal rate until paid.

**COUNT II**
**(Breach of Fiduciary Duty)**
**(Unum)**

117. All other paragraphs are incorporated by reference.

118. Under 29 U.S.C. § 1132(a)(3), this Court may enjoin any act or practice that violates ERISA or the terms of the Plan, as well as grant other appropriate equitable relief, provided that such relief is not recoverable under 29 U.S.C. § 1132(a)(1)(B).

119. Unum is a fiduciary and owes fiduciary duties to Plan participants, including Mrs. Harrison.

120. Under 29 U.S.C. § 1104(a), Unum is required to discharge their duties with the care, skill, prudence, and diligence under the circumstances that a prudent man or woman acting in like capacity and familiar with such matters would use under 29 U.S.C. § 1104(a).

121. Under ERISA, which is founded in trust principles, Unum and Good Samaritan are required to administer claims in the best interests of beneficiaries and participants as part of its fiduciary duty.

122. In multiple ways throughout the administration of Mrs. Harrison's claim, Unum breached their fiduciary duties pursuant to 29 U.S.C. § 1132(a)(3).

123. Unum's arbitrary and capricious claims handling generally constitutes a breach of fiduciary duty, because Unum's claims handling was discharged imprudently and caused Mrs. Harrison serious harm that cannot be recovered under 29 U.S.C. § 1132(a)(1)(B).

124. Unum failed to reasonably investigate Mrs. Harrison's claim.

125. Unum ignored meaningful, objective evidence of Mrs. Harrison's ongoing Disability, including the opinions of her treating provider and an independent expert.

126. Unum employed biased reviewers with longstanding insurance industry ties to generate unfavorable medical opinions resulting in the termination of Mrs. Harrison's LTD claim.

127. Unum's conduct evinces an outcome-oriented approach to Mrs. Harrison's claim.

128. On information and belief, Unum instructs and/or incentivizes certain employee(s) to terminate fully insured LTD claims and appeals based on bias or its financial interests.

129. Mrs. Harrison is informed and believes that Unum's employees are trained in administering claims in the best interests of Unum, not Plan participants.

130. Unum demonstrated bias and malice against Mrs. Harrison through its employees. Instead of fully and fairly reviewing the medical evidence, Unum unreasonably denied Mrs. Harrison's claim based on unreliable evidence.

131. Mrs. Harrison is informed and believes that Unum has targeted claims under the Plan, including Mrs. Harrison's, which is a breach of fiduciary duty.

132. On information and belief, Unum breached its fiduciary duty to Mrs. Harrison by terminating her claim in an effort to avoid its financial liability.

133. Unum's failure to act prudently and in the best interests of Mrs. Harrison is a breach of fiduciary duty requiring appropriate equitable relief following discovery of Unum's conduct as it relates to Mrs. Harrison's claim.

134. To the extent that Unum's denial of benefits caused Mrs. Harrison harm unrecoverable under 29 U.S.C. § 1132(a)(1)(B), then that harm is recoverable under 29 U.S.C. § 1132(a)(3).

135. Based on the facts of this case, Mrs. Harrison has "other equitable relief" available to her in several forms, including but not limited to surcharge,[1] because the relief available under 29 U.S.C. § 1132(a)(1)(B) does not make Mrs. Harrison whole for her losses from Unum's and Good Samaritan's breaching conduct.

136. Mrs. Harrison has experienced significant financial harm flowing from the wrongful termination of her benefits.

137. Mrs. Harrison depleted her emergency savings to help meet her financial obligations after the termination of her LTD benefits.

138. Due to the wrongful termination of her benefits, Mrs. Harrison has experienced hardships in affording some necessary medical treatment and medications.

139. The Court has broad discretion to fashion appropriate relief to make Mrs. Harrison whole and should mold the relief necessary to protect the rights of Mrs. Harrison.

140. Mrs. Harrison is entitled to injunctive or mandamus relief under 29 U.S.C. § 1132(a)(3).

---

[1] A surcharge is a kind of equitable monetary remedy against a trustee, which puts the beneficiary in the position he would have attained but for the trustee's breach. Surcharge extends to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary.

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050

141. She is entitled to enjoin any act or practice by Unum that violates ERISA or the Plan or seek other appropriate equitable relief that is traditionally available in equity.

142. Unum was unjustly enriched because of its breach of fiduciary duty violations, because it wrongfully withheld Mrs. Harrison's benefits for its own profit.

143. Unum engaged in several procedural violations to circumvent its obligations under ERISA, which is conduct the Court can enjoin.

144. Unum acted with malice and in bad faith against Mrs. Harrison, which constitutes a violation of its fiduciary obligations.

145. ERISA "does not elsewhere adequately remedy" the injuries caused to Mrs. Harrison by Unum's breach of fiduciary duty violations.

146. As a direct and proximate result of the breaches of fiduciary duty, Mrs. Harrison suffered actual, *significant* financial harm and has incurred financial expense.

147. Mrs. Harrison is entitled to prejudgment interest on the benefits to which she is entitled and on her damages at the highest legal rate until paid in full.

148. Pursuant to 29 U.S.C. § 1132(g), Mrs. Harrison is entitled to recover her attorneys' fees and costs incurred herein.

**COUNT III**
**(Statutory Penalties for Failure to Provide Plan Documents)**
**(Good Samaritan)**

149. All other paragraphs are incorporated by reference.

150. Pursuant to 29 U.S.C. § 1132(c)(1)(B), "any administrator who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper."

151.

152. Under 29 U.S.C. § 1024(b)(4), "[t]he administrator shall, upon written request of any participant or beneficiary furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated."

153. The disclosure requirements of ERISA are not empty suggestions for fiduciaries. The disclosure requirements amount to specific guidelines imposed for the purpose of ensuring that plan participants can follow and gauge the availability and character of ERISA Plan, including the very structure of the benefit plan itself. Without adequate disclosure, a participant cannot know or enforce her rights to benefits or anticipate alterations in benefits under the Plan.

154. As the Plan Administrator, Good Samaritan is subject to disclosure obligations under ERISA.

155. On October 16, 2020, Mrs. Harrison requested Plan documents from Good Samaritan via Certified Mail.

156. Per the certified mailing receipt, Good Samaritan received Mrs. Harrison's Plan document request on October 20, 2020.

157. Under ERISA 502(c), 29 U.S.C. 1132(c), Good Samaritan had a duty to produce the requested Plan documents on or before November 19, 2020.

158. Good Samaritan failed to disclose the Plan documents on or before November 19, 2020.

159. On January 4, 2021, Mrs. Harrison sent a second request for Plan documents to Good Samaritan via Certified Mail.

160. Good Samaritan received the second Plan documents request via Certified Mail on January 14, 2021.

161. Good Samaritan did not respond or otherwise produce disclosures pursuant to ERISA.

162. On July 21, 2021, Mrs. Harrison sent a third request for Plan documents to Good Samaritan via Certified Mail.

163. Good Samaritan received the third Plan documents request via Certified Mail on July 27, 2021.

164. To date, Good Samaritan has failed to produce Plan documents or respond in any way to Mrs. Harrison's three (3) requests for disclosure.

165. Mrs. Harrison sent her requests to the address identified for the Plan Administrator.

166. Good Samaritan's actions have prejudiced Mrs. Harrison, in part because its failure has prevented her from ascertaining the details of her coverage, including discretionary authority.

167. Plaintiff is informed and believes Good Samaritan has made no good faith effort to respond to Mrs. Harrison's written requests for Plan documents.

168. Good Samaritan's treatment of Mrs. Harrison is outrageous, inexcusable, and in bad faith.

169. Good Samaritan has not substantially complied with its ERISA obligations; instead, it has completely abandoned its ERISA obligations.

170. As the Plan Administrator, Good Samaritan is liable to Mrs. Harrison for its failure to properly disclose documents pursuant to 29 U.S.C. § 1132, et. seq.

171. Under 29 U.S.C. § 1132(c)(1), the Court may impose a statutory penalty of up to $110 per day[2] for each day that the Plan Administrator failed to provide a complete and proper disclosure Plan documents.

172. In light of Good Samaritan's conduct, the Court should impose the harshest sanction available.

173. Penalties began to accrue thirty (30) days after the date a written request to the Plan Administrator is made for plan documents.

174. Mrs. Harrison requested documents on October 16, 2020, which Defendant received at least by October 20, 2020.

---

[2] As required by the Debt Collection Improvement Act of 1996, the $100 limit has been increased to $110 for violations after July 29, 1997. 62 Fed. Reg. 40696.

175. Mrs. Harrison is entitled to penalties, as well as interest, costs, and attorneys' fees.

176. Penalties continue to accrue under ERISA. Penalties shall continue to accrue until Good Samaritan, as Plan Administrator, properly discloses requested documents.

**WHEREFORE**, on all claims, Mrs. Harrison requests entry of judgment against Defendants as follows:

    A.    All past and future owed LTD benefits under the terms of the Plan;

    B.    Clarifying and determining Mrs. Harrison's rights to future benefits under the terms of the Plan;

    C.    For any other benefits Mrs. Harrison may be entitled to receive under the Plan due to her disability;

    D.    All other equitable relief that is proper as a result of Defendants' breaches of fiduciary duties;

    E.    For statutory penalties against Good Samaritan at the maximum penalty permitted;

    F.    For an award of Mrs. Harrison's attorneys' fees and costs incurred herein under 29 U.S.C. § 1132(g) and A.R.S. §§ 12-341.01 and 351;

    G.    An award of prejudgment interest on benefits and damages at the highest legal rate until paid; and

    H.    For such and further relief as the Court deems just, equitable, and reasonable.

Dated this 8th day of September, 2021.

                        RONSTADT LAW, PLLC

                        By: *s/ Erin Rose Ronstadt*
                              Erin Rose Ronstadt
                              Kyle Shelton
                              Attorneys for Plaintiff

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th St., Ste. B, Phoenix, AZ 85014
(602) 615-0050